**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EZEQUIEL CARRASQUILLO-GONZALEZ, et al<br><br>Plaintiffs<br><br>v.<br><br>ANTONIO SAGARDIA-DE-JESUS, et al<br><br>Defendants | **Civil No. 09-1776 (SEC)** |

**OPINION & ORDER**

Pending before the Court is Defendants' Motion to Dismiss or for Reconsideration (Docket # 27), and Plaintiffs' opposition thereto. See Docket # 30. For the reasons set forth below, the Court will **GRANT in part and DENY in part** the Motion to Dismiss.

**Factual Background**

Ezequiel Carrasquillo-Gonzalez ("Carrasquillo")("Plaintiff")[1] is an employee of the Commonwealth of Puerto Rico's Department of Justice, Bureau of Special Investigations ("NIE" in Spanish) where he currently holds the position of Inspector of Special Investigations in the INTERPOL branch of the NIE. He occupies said position in a probationary capacity. Plaintiff avers that he is a member of the Popular Democratic Party ("PDP") and that he participated in partisan political activities during his tenure as a public servant, over a span of approximately twenty years, beginning with the Rafael Hernández Colón PDP administration in 1985. Carrasquillo alleges that after a change in administration in early 2009, when the New Progressive Party ("NPP") won the elections, he was illegally transferred and stripped of his duties and responsibilities as an NIE Inspector. According to the complaint these actions are part of an overall conspiracy to remove him by creating a hostile work environment, forcing him

---
[1] As this motion to dismiss only involves Carrasquillo's Section 1983 claims, which do not extend to the other Plaintiffs, this Court will only refer to Carrasquillo or Plaintiff.

to resign or to otherwise deny him permanence as Inspector after the conclusion of his probationary period.

Defendants, on the other hand, claim that Plaintiff's former position is a trust position under Puerto Rico law, which allows dismissal on the basis of political affiliation.[2] They additionally claim that Plaintiffs have failed to plead specific acts regarding Co-defendants Antonio M. Sagardia-De-Jesus ("Sagardia"), Victor Carbonell-Ramirez ("Carbonell"), Edwin Carrion-Soto ("Carrion"), William Machado-Aldarondo ("Machado"), and Ismael Cintron-Cintron ("Cintron") but rather make generalized assertions, which are not admissible, as they have failed to meet the minimum pleading standard set forth in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

This Court initially ruled that Plaintiff's allegations were sufficient to plead a plausible cause of action under Iqbal against Sagardia, Carbonell, Machado, and Cintron for allegations regarding discriminatory treatment in violation of the First Amendment after Carrasquillo's transfer to INTERPOL, but that Plaintiff did not plead a plausible claim for relief regarding his allegations surrounding his removal from the post of Auxiliary Director for the Witness and Victim Protection Program.

Shortly after the ruling, at a Case Management & Settlement Conference, Defendants requested leave to file a motion for reconsideration regarding Sagardia, Carbonell, Machado, and Cintron, and Plaintiff responded by requesting leave to file an Amended Complaint. This Court granted both party's requests, but stated:

---

[2] See P.R. An. St. §138:"The Secretary shall designate Deputy Directors as needed to direct the different Divisions in which the Bureau shall be structured, and shall serve in these positions at his discretion."

> The Amended Complaint cannot refer to Carrasquillo's removal from the Witness Protection Program as a cause of action, and the Court will not revisit its initial ruling on this issue, Due Process or Equal Protection. What remains in controversy is whether his transfer to INTERPOL, and subsequent treatment in said office constitute a violation of the First Amendment.

Docket # 25. Neither party objected to this ruling. Accordingly, Plaintiff proceeded to file an Amended Complaint, and Defendants filed the present Motion to Dismiss or for Reconsideration.

**Standard of Review**

It has been established that "the general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 49 (1st Cir. 2009) (citing FED. R. CIV. P. 8(a)(2)). Complaints do not necessarily need to include detailed factual allegation, but must provide "more than a sheer possibility that a defendant has acted unlawfully."Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007); see also Iqbal, 129 S. Ct. at 1949. As a result, for a plaintiff's claims to survive a motion to dismiss there must be "a plausible entitlement to relief." Twombly, 550 U.S. at 1965. Furthermore, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F.3d 87, 95 (1st Cir. 2008). Conclusory statements and repetition of the elements of the case do not suffice. Iqbal, 129 S. Ct. at 1949.

Pursuant to FED.R.CIV.P. 12(b)(6), a court cannot dismiss a claim unless it is apparent that no relief can be granted under any of the facts that can be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984). Under the same rule, the court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable interests in favor of the plaintiff. However,

it is *well-pleaded* facts that must be taken as true and therefore admitted. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). The court will proceed to evaluate Carrasquillo's claims in order to determine whether they meet this standard and if there is a plausible entitlement to relief.

**Applicable Law & Analysis**

*Political Discrimination (First Amendment)*

The freedom to belong to and support a political party, or engage in other forms of expression regarding public policy, is "integral to the freedom of association and freedom of political expression that are protected by the First Amendment." Welch v. Ciampa, 542 F.3d 927, 939 (1st Cir. 2008). The First Amendment applies to Puerto Rico through the dispositions of the Fourteenth Amendment. As a result, public employees enjoy protection from adverse employment actions based on their political affiliation or beliefs. See Branti v. Finkel, 445 U.S. 508, 100 S. Ct. 1287 (1980). These actions include changes in employment which result in "a work situation 'unreasonably inferior' to the norm for that position." Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989); see also Rodriguez-Garcia v. Miranda-Marin, ____ F.3d ____ , 2010 WL 2473321 (1st Cir. 2010)(stating "[a]ctions short of dismissal or demotion, including denials of promotions, transfers, and failures to recall after layoff, can constitute adverse employment actions.")(citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 75 (1990)).

Beyond this, to prevail on a claim of political discrimination, a public employee must at a minimum show that he engaged in constitutionally-protected conduct and that this conduct was a substantial factor in the adverse employment action. Mt. Healthy City Bd. of Ed. v. Doyle,

429 U.S. 274 (1977). However, even if the government has considered an impermissible criterion when making the adverse employment action brought by the plaintiff, it can defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration. Id.; see also Rodriguez-Garcia, ____ F.3d at *7.

This Court's prior Opinion and Order (Docket #23) in the present action cites Ruiz-Casillas v. Camacho-Morales, 415 F.3d 126, 131 (1st Cir. 2005), which held that "plaintiffs must first establish that party affiliation was a substantial or motivating factor behind the adverse employment action." Establishing this in a *prima facie* case requires that "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's . . . affiliation; (3) . . . a challenged employment action [occurred]; and (4) . . . 'political affiliation was a substantial or motivating factor' behind it." Peguero-Mornta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006))." Furthermore, as mentioned above, the challenged employment action must result in "unreasonably inferior" working conditions in order to prosper. Rosario-Urdaz v. Velazco, 433 F.3d 174, 178 (1st Cir. 2006). The Court will discuss if Plaintiff's transfer to INTERPOL or his subsequent treatment thereafter constitute a challenged employment action providing grounds for a political discrimination case.

*1) Transfer to INTERPOL*

Acevedo-Diaz v. Aponte, 1 F.3d 603 (1st Cir. 1991), establishes that mere temporal proximity between a change of administration and a public employee's dismissal is not enough to demonstrate the existence of a discriminatory animus. However, the atmosphere occasioned by a major political shift throughout Puerto Rico during a change of government, combined with the fact that discharged employees and discharging officials are of competing political

persuasions, may produce probative circumstantial evidence of discriminatory animus, especially where discharged employees played very active or prominent roles in political activities. Plaintiffs bear the original burden of proof and must produce sufficient evidence from which it may be inferred that their constitutionally protected conduct was a "substantial or motivating factor" for their dismissal. Once this takes place, the burden shifts toward the defendants, who must elaborate nondiscriminatory grounds for dismissal. Id.

In his Amended Complaint (Docket #26), Plaintiff recounts several supposed instances of discrimination, including among others: discriminatory comments made by Inspector Armando Sánchez (not included as a party in the Complaint), exclusion from department meetings held on February 11, and March 9, 2009, and a general pattern of alleged humiliation and disempowerment which culminated in his transfer (via a personnel transaction letter dated March 10, 2009 and signed by Sagardia). These are, however, speculative allegations. Moreover, Carrasquillo has not fulfilled the burden of proof needed to generate a cause of action regarding his transfer, as explained in this Court's previous Opinion & Order. See Docket # 23-2 at 2-3 & 4-5 ("Plaintiffs have not alleged that Carrasquillo's position as Auxiliary Director for the Witness and Victim Protection Program was a career appointment, rather he suggests his career position is that of Inspector."). Unlike career or contract employees, trust employees may be removed at will, and "thus, trust employees do not have a constitutionally protected property interest in that position." Id. (internal citations omitted)(citing Galloza v. Foy, 389 F.3d 26, 34 (1 Cir. 2004). Plaintiff has not contested his transfer as depriving him of a career position, and as such the Court is not bound to determine if his transfer was motivated

**CIVIL NO. 09-1776 (SEC)**                                                                                                    **Page 7**

by political animus.[3] The Court will now examine Carrasquillo's allegations once he arrived at said agency.

*2) After Transfer to INTERPOL*

When deciding whether a challenged employment action resulting in unreasonably inferior conditions has occurred, "[a]ctual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." Lopez-Quinones v. P.R. Nat. Guard, 526 F.3d at 26 (1st Cir. 2008) (citing Olmeda v. Ortiz-Quinonez, 434 F.3d 62, 66 (1st Cir.2006)). Generally, "an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury. If, however, a temporary change in duties is so inappropriate as to be demeaning and persists...the severity threshold may be met." Agosto de Feliciano, 889 F.2d at 1219. Also, the Court may consider additional factors such as "lost access to telephone and photocopier, poorer office accouterments, worse hours" when deciding if the threshold of constitutional injury has been reached. Id.

First, Plaintiff alleges that the hostile environment around him increased after Carbonell was assigned as Director of the NIE, is currently ongoing, and causes him harm. He has not, however, provided concrete facts to support his claim. Another vague assertion surges in fact 63 of the Amended Complaint, in which Plaintiff claims that after his transfer and upon reporting to Cintrón on April 13, 2009, he was told to "wait" but not assigned any tasks. Plaintiff affirms that he drew up a list of his duties and alleges that Cintron proceeded to make changes to it. It must be noted that Plaintiff has not stated whether he has assumed his duties and responsibilities since then, or what his duties in his new position were meant to entail.

---

[3] This holding and that included at Docket # 25 renders as **moot** Plaintiff's asseverations 22-99 of the Amended Complaint. Docket # 23 at 5-7.

Carrasquillo also claims that he lost his cell phone privileges, like other Auxiliary Directors from the PDP administration, and that this ongoing situation hampers his ability to perform his duties and remain in constant contact with team members, a necessary function of his job. This is an inferior condition, but it originated before his transfer to INTERPOL and is therefore moot in light of the above and this Court's ruling at Docket # 25.

Finally, Plaintiff claims that as he is the highest ranking employee after Cintrón in INTERPOL, he should be left in charge when Cintrón is not present. Instead, he alleges that he is ignored or bypassed in favor of lower ranking employees, with complete disregard for his own rank. He specifically states that this behavior on the part of Carbonell and Cintrón is part of the overreaching political animus against him and furthers the hostile environment. Plaintiff believes the exposure to what he terms inferior working conditions are a pretext to prevent him from completing his probationary period as Inspector and achieving the position.

Previously, this Court found that the four requirements for establishing a *prima facie* political discrimination case met the Iqbal plausibility standard and therefore survived the motion to dismiss stage, pending discovery. Upon reconsideration, however, it remains unclear whether the third and fourth requirements, which are the crux of the matter, can be satisfied beyond the level of plausibility as to all Defendants. Furthermore, Plaintiff has not indicated how each Co-defendant was a party to the supposed discrimination, nor has he established conclusively that there was a systematic pattern of behavior after his transfer that would meet the threshold for a constitutional violation. Carrasquillo has made sufficient allegations that he engaged in constitutionally protected conduct (freedom of association), but fails to provide sufficient allegations from which it may reasonably be inferred that this conduct played a substantial part behind Defendants' adverse employment action.

**CIVIL NO. 09-1776 (SEC)**                                                                                    **Page 9**

There have been cases where political discrimination on forbidden animus has been found plausible when the plaintiffs allege the following: (1) association with a given political party, (2) performance of non-policymaking functions, (3) a general election whereby there was a change in the executive branch where they worked, (4) dismissal from public employment following the change in administration, (5) said dismissal was without cause or pretextual, and (6) replacement by individuals associated with the political party that recently assumed power. Anthony v. Sundlun, 952 F.2d 603 (1st Cir. 1991) (citations omitted) (see Docket #30 at 15). Carrasquillo does not meet this criteria to the Court's satisfaction because he was not dismissed, but merely given a new position within the Department of Justice. However, the personnel transaction letter may be considered without cause or pretextual if Plaintiff's claim that it did not provide explanation is true, but it only applies insofar as it regards Carrasquillo's transfer, a matter that is not in controversy at this time.

*Individual Defendants*

In order for a plaintiff's claim to prosper under § 1983 action for deprivation of rights, he "must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). Moreover, the First Amendment protects non-policymaking public employees from adverse employment actions based upon their political views. Id. at 152. In a political discrimination case, the plaintiff must link each defendant with the alleged discriminatory practices. González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). Since the burden of proof rests first with the plaintiff, he must offer substantial evidence that specific discriminatory practices have actually occurred.

In its defense, an employer may seek to discredit the plaintiff's evidence that there was an impermissible motive for the adverse treatment. An employer may also defend against such a suit by producing "enough evidence to establish that the plaintiff's [situation] would have occurred in any event for nondiscriminatory reasons." Acevedo-Diaz v. Aponte, 1 F.3d at 67. This affirmative defense requires that an employer show by a preponderance of the evidence that it would have taken the same action regardless of the plaintiff's political affiliation. Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Padilla-Garcia, 212 F.3d at 77 (1st. Cir. 2000). An employer may successfully raise a Mt. Healthy defense by establishing that the plaintiff's activity or status, although it may have been improperly considered, was not the but for cause of the adverse employment action. See Welch, 542 F.3d at 941 (citing Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)). It is the defendant's burden to "persuade [] the factfinder that its reason is credible." Cortes-Reyes v. Salas Quintana, __F.3d__, 2010 WL 2404385 at 4. The Mt. Healthy defense also applies to Section 1983 claims.

Plaintiff's claims against Sagardia, the former Secretary of Justice, and Machado, Auxiliary Secretary of Human Resources of the Dept. of Justice, and Carrion who succeed Plaintiff at the Witness Protection Program, do not meet the burden of proof needed to include them as parties to litigation. After the transfer to INTERPOL, Carrasquillo has not alleged that Sagardia, Machado, or Carrion knew of or participated in the alleged discriminatory practices against him. As Sagardia and Machado's alleged actions pertain only to Plaintiff's transfer, and Carrion's involvement was also before the transfer, the claims against them cannot proceed. Furthermore, Plaintiff has not contested that his former position was a trust position and

therefore one where he was subject to removal on basis of political affiliation. As a result, his allegations against Defendants Sagardia, Machado, and Carrion fail.

Regarding Carbonell, Plaintiff claims that he conspired to create an atmosphere of harassment and increasing hostility once he assumed the position of Director of the NIE. In addition, Plaintiff alleges that Carbonell was involved in his transfer because of political animus. The latter of these allegations does not proceed because once again it touches on Plaintiff's transfer, a moot point. Furthermore, Plaintiff does not present evidence of Carbonell's actions that would have contributed towards the alleged discrimination, other than supposedly contacting Cintrón for information about Carrasquillo and not allowing Cintrón to assign Plaintiff any duties.

Although the pleadings in this case are wanting for factual detail regarding the alleged stripping of work assignments and duties after Carasquillo's transfer, and Carbonell's alleged involvement, this Court finds that they just inch over the line as sufficient under Iqbal.

The claims against Cintrón are that he changed Carrasquillo's list of duties to include tasks that in his opinion did not meet those of an Inspector, and that he was not allowed to assign Plaintiff duties despite his efforts to do so. If this is true, then Cintrón is potentially liable under Section 1983 in his official capacity. However, Plaintiff must link him to specific actions emanating from a discriminatory animus in order for Cintrón to be held liable. If Cintrón's actions were merely following orders, forbidden animus is not present and he did not act under color of state law to deprive Plaintiff of his constitutional rights.

It is worth noting that government officials may not be held liable, under Bivens v. Six Unnamed Members of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (U.S.N.Y. 1971), or 42 U.S.C.A. § 1983, for unconstitutional conduct of their subordinates under the

**CIVIL NO. 09-1776 (SEC)** Page 12

theory of respondeat superior; because vicarious liability is inapplicable, plaintiff must plead that each government official-defendant, through his or her own actions, has violated Constitution. Plaintiff must prove that Defendants engaged in "purposeful discrimination"to establish a violation. Iqbal, 129 S. Ct. at 1949. Thus, Carrasquillo bears the burden of attributing specific acts to Carbonell and Cintrón and providing sufficient evidentiary support for them to be found liable under § 1983. He also must establish facts that they knew of his political affiliation.[4]

Accordingly, Plaintiff's First Amendment claims under Section 1983 are hereby **DISMISSED with prejudice** as to Defendants Sagardia, Machado, and Carrión but the Motion to Dismiss is **DENIED** as to the First Amendment claims under Section 1983 against Cintrón and Carbonell. The allegations against Cintron and Carbonell, while thin, must be examined at the motion for summary judgment stage or at trial.

*Due Process*

Concerning Due Process, this issue has already been ruled on in the previous Opinion & Order, but for the sake of thoroughness this Court will once again explain its holding.

Trust employees can be removed at will and therefore do not have a constitutionally protected property interest in their position. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 126, 131 (1st Cir. 2005). It is only when plaintiff has successfully established a property interest that he is able to claim due process protection. Educadores Puertorriquenos v. Rey Hernandez, 508 F.Supp.2d 164, 184 (1st Cir. 2007). Property interests derive from state law, not the

---

[4] The First Circuit has recognized in various instances the singularity of the Commonwealth's "highly charged political atmosphere." Kercado-Melendez, 829 F.2d 255, 264 (1st Cir. 1997). Plaintiff alleges that held several positions under former PDP governments, including trust positions. Nonetheless, Plaintiff bears the burden of proof in political discrimination cases of providing facts and allegations that each Defendant was aware of his political affiliation.

**CIVIL NO. 09-1776 (SEC)**                                                                                   **Page 13**

Constitution, and a person must have "a legitimate claim or entitlement to it" in order to invoke due process, as opposed to a "unilateral expectation of it." Id. In addition, Galloza v. Foy, 389 F.3d 26, 33 (1st Cir. 2004), stresses that the Due Process Clause of the Fourteenth Amendment protects those who have a vaunted interest in "*continued* public employment" (emphasis supplied). In Puerto Rico, it is held that State public employees only have a property interest in their positions when the State has provided an expectation of continuing employment. Caro v. Aponte Roque, 878 F.2d 1 (1st Cir. 1989). Generally, trust employees do not have said property interest and cannot claim due process protection. Ruiz-Casillas v. Camacho Morales, 415 F.3d 127, 134 (1st Cir. 2005).

Plaintiff has not alleged that his former position was a career position. Furthermore, given that Commonwealth law designates his former position as on of trust, his transfer was legitimate and as such Sagardia was within his rights to transfer Plaintiff and adjust his salary accordingly. Plaintiff has not lost his employment; he was merely reassigned. This Court previously ruled that his position as Auxiliary Director was one of trust, and was consequently subject to removal based on political considerations. He has not demonstrated that he was deprived of his property interest in his position, or that he even had one in the first place. Plaintiff therefore has no legitimate claim and his Fourteenth Amendment Due Process claim is hereby **DISMISSED with prejudice**.

*Equal Protection*

As stated previously by this Court, Plaintiff's Equal Protection claim cannot prosper on the grounds that political discrimination claims should be set forth under the First Amendment, as it would be redundant to proceed under political discrimination and equal protection. The former precludes the latter: "allegations of political discrimination fit with the contours of the

**CIVIL NO. 09-1776 (SEC)**                                                                      **Page 14**

First Amendment, they are, a fortiori, insufficient to ground a claim that the politically inspired misconduct violated equal protection guarantees." Pagan v. Calderon, 448 F.3d 16, 36 (1st Cir. 2006). Accordingly, Plaintiff's Equal Protection claim is hereby **DISMISSED with prejudice**.

*Qualified Immunity*

The Court determined in its Opinion and Order (Docket # 23) that there were no grounds for conferring qualified immunity upon the Defendants. This doctrine hinges on a two-step test, where it must be established "(1) whether the facts alleged or shown by the plaintiff make out a violation of constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). If either of these steps is found applicable, the defendant is entitled to immunity.

In their Motion to Dismiss (Docket #27), the Defendants reiterate their belief that Plaintiffs' claims do not meet the Iqbal standard and must therefore be dismissed with prejudice. As discussed before, this standard, which elaborates the one set forth in Twombly, requires that the Court determine if a plaintiff has a plausible entitlement to relief, considering the factual circumstances established in his complaint. Defendants claim that Plaintiffs' allegations in the Amended Complaint (Docket #26) are too vague to constitute a violation of a clearly established constitutional right. However, the Court stated previously (See Docket #23) that Plaintiff's alleged violation of his constitutional rights was plausible and therefore bypassed the motion to dismiss stage. This Court now determines that the facts alleged by Carrasquillo do not implicate Sagardia, Machado, or Carrion in the alleged violation. Thus, the immunity issue is moot as to these Co-defendants. However, as to Carbonell and Cintron, the first step of the test is put into question and the qualified immunity defense cannot be upheld.

Furthermore, the second step of the test has two aspects. One is "the clarity of the law at the time of the alleged civil rights violation... '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Maldonado, 568 F.3d at 269. The second aspect deals with the facts of the specific case and "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Id. It is important to analyze the particular context of the case in order to determine whether the official had "fair warning that his conduct was unconstitutional." Id. Regarding the case at hand, it is inconceivable that Carbonell and Cintron did not have reasonable knowledge as public officials that discriminating against someone on the basis of their political affiliations was a violation of the United States Constitution, specifically the First Amendment under freedom of association. Therefore, it is to be expected that a reasonable official would have fair warning that this conduct, had it taken place, would be considered illegal and a violation of constitutional rights. As stated previously, qualified immunity cannot therefore be conferred upon Carbonell and Cintron. Their qualified immunity claims are hereby **DENIED**.

*Judgment on the Pleadings*

A heightened pleading standard does not apply in federal civil rights actions except where either federal statute or specific civil procedure rule requires that result. Educadores Puertorriquenos v. Rey Hernandez, 367 F.3d 61 (1st Cir. 2004). Therefore, "[i]n a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why-although why, when why means the actor's state of mind, can be averred generally." Id. at 68. This Court found that the pleadings met the plausibility standard, and that a higher pleading standard is usually

incompatible with the liberal attitude generally taken towards civil rights claims. As stated previously, Plaintiff's First Amendment violation claims meet the Iqbal standard and cannot be dismissed as to Carbonell and Cintrón. Accordingly, Defendants' motion for judgment on the pleadings is **DENIED** insofar as it applies to said co-defendants.

**Conclusion**

In order to determine with certainty whether there was in fact a violation of the Plaintiff's constitutional rights, discovery must take place. The Amended Complaint does present facts that are sufficient to raise a plausible expectation that discovery may yield evidence for the necessary elements of the Plaintiff's causes of action against Carbonell and Cintron. Carrasquillo alleges that Carbonell contributed to the hostile environment at his new position and that he urged Cintrón to undermine his authority and ordered him not to give Plaintiff tasks. If this is indeed the case, Plaintiff must set forth a claim that rises above the speculative level by providing a detailed account of Carbonell and Cintron's actions that could pinpoint a possible discriminatory political animus.

In light of the foregoing, all claims against Sagardia, Machado, and Carrion are **DISMISSED WITH PREJUDICE**, as are all of Plaintiff's claims brought under the Due Process and Equal Protection clauses of the Constitution. However, the motion to dismiss is **DENIED** as to Plaintiff's First Amendment claims against Carbonell and Cintron.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 14th day of July, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
United States District Judge